GARY BOAT CLUB, INC. *v.* OSELKA

1. CONTRACTS—CONSTRUCTION—INTENT—ATTENDANT FACTS.

Due regard must be given to the intentions of the parties to a contract as indicated by their language and the attendant facts and circumstances when construing the provisions of the contract, and such intent, when ascertained, must prevail over the literal meaning of the expressions used in the agreement.

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 17 Am Jur 2d, Contracts §§ 244, 246, 253.
[2] 5 Am Jur 2d, Appeal and Error §§ 839–842.
[3] 53 Am Jur, Trial §§ 1122, 1123.
[5] 17 Am Jur 2d, Contracts §§ 244–253, 272.
[6] 55 Am Jur, Vendor and Purchaser § 28 *et seq.*
   17 Am Jur 2d, Contracts §§ 60, 61, 320–323.

2. TRIAL—NONJURY TRIAL—FINDINGS OF FACT—APPEAL AND ERROR.

A party, on appeal from the decision of a nonjury trial, must show that the trial court clearly erred in making its factual findings (GCR 1963, 517.1).

3. TRIAL—NONJURY TRIAL—COURT'S FUNCTION.

A trial judge in a nonjury action evaluates the testimony of each witness, draws permissible inferences, and decides the issues in the light of controlling principles.

4. CONTRACTS—AMBIGUOUS CONTRACT—COURT'S DUTY—INTENT.

A court must determine the true intent of the parties to a contract by construction of the instrument where ambiguity exists.

5. CONTRACTS—CONSTRUCTION—INTENT—DETERMINATION.

Determining the true intent of contracting parties demands that the trial court consider the language employed, the subject matter, and the surrounding circumstances under which the parties entered into the agreement; the court should effectuate the intent of the parties when the agreement was consummated.

6. CONTRACTS—AMBIGUOUS CONTRACT—OPTIONS.

Determination that an ambiguous contract provision giving the plaintiff the right, after 5 years, to buy the defendants' real estate unless the land was needed for the development of a harbor by the government or for the construction by the defendants of a new navigation channel meant that the option was not exercisable if the land was needed for a government harbor and if for only that reason the defendants had to build a new navigation channel where, during the five-year period in which the option was not exercisable, the defendants had never applied for any of the necessary permits to construct a channel or for a permit to construct a retaining wall, necessary to prevent the flooding of any excavation, and a hole dug in the disputed land was completely flooded for several years.

Appeal from Berrien, Karl F. Zick, J. Submitted Division 3 January 5, 1971, at Grand Rapids. (Docket No. 8173.) Decided March 23, 1971. Leave to appeal denied July 19, 1971, 385 Mich 770.

Complaint by Gary Boat Club, Inc., against Paul F. and Elsie K. Oselka for specific performance of

a contract. Defendants counterclaim. Judgment for plaintiff. Defendants appeal. Affirmed.

*Killian, Spelman, Taglia, Meek, Lagoni & Burdick,* for plaintiff.

*Riley & Roumell* (by *Michael H. Feiler*), for defendants.

Before: HOLBROOK, P. J., and McGREGOR and T. M. BURNS, JJ.

McGREGOR, J. Defendants appeal as of right from a judgment of the circuit court decreeing conveyance of a parcel of land to the plaintiff upon payment to defendants of $44,830. Plaintiff instituted this action, seeking specific performance of the contract of purchase, which it alleged required the conveyance sought. The defendants filed a counterclaim. Both agree that the written agreement (contract) is ambiguous, at least, part of it. Much of the testimony and evidence was conflicting. The trial court found actual ambiguity in the contract, principally in part of paragraph 9 of the agreement.

Defendants are the owners of the Snug Harbor Marina, situated on land across from a peninsula of land bordered on the west by Lake Michigan and on the east by the channel (the channel opens into the Galien River about 200 feet from Lake Michigan), upchannel from the mouth of the Galien River; in addition, they owned the peninsula. Access to Lake Michigan by boats moored in the channel is through the mouth of the Galien River. Since 1954, defendants have annually dredged the mouth to preserve this access to their marina, although other boat owners used the dredged area.

In 1960, the plaintiff boat club was searching for a new location and approached the defendants in its effort to obtain a location for its club on the peninsula. After a series of meetings, the contract here in dispute was executed.

The peninsula was divided into three land parcels: B, the first parcel adjoining the mainland; A, the next contiguous parcel; and C, the tip of the peninsula. Parcel A, with 400 frontage feet on Lake Michigan, was immediately conveyed to plaintiff in return for $40,000. Parcel B was subsequently conveyed to plaintiff in return for $100 per frontage foot, pursuant to the contract. The remaining Parcel C is the subject of this suit. The status of the parcel is governed by paragraph 9 of the contract:

"The Oselkas further grant to the club and its successors, the option, for a period of ten (10) years from the date of this agreement, to purchase the following described real estate, or such part thereof as may remain at the time of the exercise of said option between the Parcel A real estate and the nearest bank of any new navigation channel or harbor which may have been constructed through or along said real estate, for a purchase price of One Hundred ($100.00) Dollars per front foot plus the actual cost to Oselkas of any buildings, landscaping or other improvements hereafter made thereon, to wit: [therein follows the legal description of Parcel C].

"It is understood that the Oselkas contemplate that part of said Parcel C real estate may be needed for the development of a harbor by governmental agencies or for the construction by Oselkas of a new navigation channel leading to Lake Michigan; and, for said purpose, it is agreed that the option herein granted shall not be exercised until either the land required for the aforesaid developments

shall have been determined to the satisfaction of Oselkas or until the expiration of five (5) years from the date of this agreement, whichever event first occurs, and that said option shall be capable of being exercised at any time thereafter and until the the expiration of the said ten (10) year option period."

It was defendants' contention that paragraph 9 permitted them to preclude plaintiff's exercise of an option to purchase Parcel C by making a determination within five years that they personally would build a navigation channel across Parcel C. At the time the disputed contract was written, no constructional work had yet been begun by the Army Corps of Engineers (apparently the government agency referred to in the disputed contract) on the contemplated project. Defendants, however, did not want to continue forever to provide the outlet for the other competing marinas on the channel. They claim that they intended to reserve to themselves the right to determine to construct a private navigation channel across Parcel C within five years after the execution of the contract of purchase, if the Federal project still had not been begun. The conflicting evidence was properly considered by the trial court, in finding that defendants' notice was given in bad faith.

The trial court found:

"(c) Mr. Oselka, himself, admitted that he never, at any time applied for a permit from the Federal, state, city or village government to construct a channel, although he knew that such a permit was necessary. He further testified that he knew that a retaining wall on the Lake Michigan side of his excavation would be necessary to prevent Lake Michigan from overflowing and filling in his excavation; that a permit for this retaining wall would

be necessary and that he never applied for a permit for such retaining wall. Lake Michigan was in fact allowed to flow completely over and fill the hole dug in Parcel C, between 1965 and 1968."

In construing the provisions of a contract due regard must be given to the intentions of the parties as indicated by their language and the attendant facts and circumstances, and such intent, when ascertained, must prevail over the literal meaning of the expressions used in the agreement. *Stark* v. *Budwarker, Inc.* (1970), 25 Mich App 305.

An additional issue at trial was to what amount, if any, defendants were entitled as "the actual cost to Oselkas of any buildings, landscaping or other improvements hereafter made thereon" if the defendants were required to convey. Defendants claimed as improvements the construction of seawalls, boat wells, a gas dock, and walkways. Plaintiff claimed these amounts should be offset by waste committed by defendants, and also claimed that these items of construction were not, in most instances, improvements but were maintenance and repairs for the benefit of the defendants.

The trial judge found for the plaintiff, and disallowed defendants' claims except for a part thereof, finding waste to have been committed by the defendants. The trial court further ordered specific performance by the defendants upon payment by the plaintiff of $40,330 for 403.30 feet of frontage, plus damage adjustments and improvements of $4,500, for a total of $44,830, with taxable costs to plaintiff.

The principal issues before this Court appear to be: (1) whether the trial court clearly erred in interpreting an admittedly ambiguous contract in the manner in which it did, and (2) whether the trial court clearly erred in excluding as costs of improve-

ments those repairs, maintenance, and improvements built on the property. There were other issues raised which are not pertinent to this decision.

This was a nonjury trial, and the defendants, on appeal, must show that the trial court clearly erred in making its factual findings. GCR 1963, 517.1; *Insurance Company of North America* v. *Iroff* (1967), 9 Mich App 151. A trial court, as the trier of facts, when sitting without a jury, evaluates the testimony of each witness, draws permissible inferences therefrom, and decides the issues in the light of controlling principles. *Texaco, Inc.,* v. *Lumsden* (1970), 23 Mich App 30. Plaintiff bears the burden of establishing its interpretation of the contract by a clear preponderance of the evidence; there must be a glaring error by the trial court on a finding of fact to afford occasion for reversal by this Court. *Barnes* v. *Beck* (1957), 348 Mich 286. Plaintiff, as draftor of the agreement, had an initial burden of overcoming the presumption that an ambiguous contract term is to be strictly construed against the preparer of the contract. *Keller* v. *Paulos Land Company* (1968), 381 Mich 355, 362.

The critical factor in the trial court's findings is the ambiguity of the contract as set out, *supra.* The original states that part of Parcel C "may be needed for the development of a harbor by governmental agencies or for the construction by [the defendants] Oselkas of a new navigation channel leading to Lake Michigan". The trial court reconstructed this to read that Parcel C "may be needed for the development of a harbor by governmental agencies and that it may for that reason be necessary for the Oselkas to construct a new navigational channel leading to Lake Michigan".

"We are well aware of the settled rules of law, so well established that citation of authority therefor

is unnecessary, that it is not the province of the court by construction or by the addition of words or punctuation to remake the contract of the parties or to find a meaning not intended. Where ambiguity exists, however, it is the duty of the court to determine, if possible, the true intent of the parties by construction of the instrument." *Fox* v. *Detroit Trust Company* (1938), 285 Mich 669, 677.

In determining this "true intent" the trial court should consider the language employed, the subject matter, and the surrounding circumstances under which the parties entered into the agreement; it should effectuate the intent of the parties when the agreement was consummated. *Kellogg* v. *Kellogg Toasted Corn Flake Co.* (1920), 212 Mich 95; *Montgomery* v. *Central National Bank & Trust Co. of Battle Creek* (1934), 267 Mich 142.

In the instant case, the trial court found:

"The court specifically finds that at no time between the execution of the agreement of the parties and the expiration of five (5) years was there any reasonable cause on the part of Oselkas or the Boat Club to apprehend the necessity of a channel through Parcel C in connection with the development of a harbor by governmental agencies."

The trial court's finding that defendants' option to build a navigational channel only if the Federal government also built a harbor can be supported from the evidence.

Defendants contend that the trial court, after mandating sale of the parcel, erred in disallowing their claims for alleged improvements pursuant to the contract. Defendants claimed that the seawalls, docks, and the boat wells constitute such compensable improvements. It was plaintiff's contention that all or much of the defendants' alleged improvements merely constituted maintenance or ordinary

repairs, or was for defendants' current use, and that further defendants had committed waste on the property.

The evidence was conflicting regarding the improvements, and the findings of fact made by the trial court were sufficient to indicate a factual basis for its ultimate conclusion. *Lacey* v. *City of Warren* (1967), 7 Mich App 105.

This Court has analyzed the defendants' claim of error concerning the deposition, and finds no reversible error therein.

Affirmed. Costs to plaintiff.

All concurred.