BEN T. YOUNG COMPANY v LAFAYETTE EAST COMPANY

OPINION OF THE COURT

1. CONTRACTS—GUARANTEES—BREACH—BURDEN OF PROOF—FINDINGS.

A party who claims a breach of a guarantee of material and workmanship in a construction contract has the burden of demonstrating that the other party did not perform in accordance with the contract, and a finding by a trial court that such a burden was not discharged will not be disturbed unless it is clearly erroneous (GCR 1963, 517.1).

2. CONTRACTS—AMBIGUITIES—CONSTRUCTION.

Ambiguous language in a contract must be resolved against the party drawing the contract.

3. CONTRACTS—GUARANTEES—SCOPE OF GUARANTEE.

A subcontractor, in guaranteeing that workmanship and materials used on a roof will be "first class", guarantees only that its own work, and not that of others, will be of the highest quality.

DISSENT BY BRONSON, P. J.

4. CONTRACTS—GUARANTEES—BREACH—BURDEN OF PROOF—EVIDENCE —SUFFICIENCY OF EVIDENCE.

*A contractor met the burden of proof necessary to sustain its counterclaim against a subcontractor for breach of a guarantee of quality of materials and workmanship, where a review of the record indicates that sufficient evidence was presented to support the counterclaim.*

Appeal from Wayne, George E. Bowles, J. Submitted Division 1 June 5, 1974, at Detroit. (Docket No. 17978.) Decided October 8, 1974.

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 13 Am Jur 2d, Building and Construction Contracts §§ 121, 144. 17 Am Jur 2d, Contracts § 441 *et seq.*

[2] 17 Am Jur 2d, Contracts § 275.

[3] 13 Am Jur 2d, Building and Construction Contracts § 26.

Complaint by Ben T. Young Company against Lafayette East Company for money due on a contract. Counterclaim by defendant for damages for breach of contract. Judgment for plaintiff. Defendant appeals. Affirmed.

*Marston, Sachs, O'Connell, Nunn & Freid, P. C.,* for plaintiff.

*Hyman & Rice,* for defendant.

Before: BRONSON, P. J., and J. H. GILLIS and VAN VALKENBURG,* JJ.

VAN VALKENBURG, J. Plaintiff-appellee, Ben T. Young Company, is a waterproofing subcontractor. Defendant-appellant, Lafayette East Company, is a general contractor. On August 4, 1967, Lafayette subcontracted to Young installation of membrane waterproofing on the roof of a building Lafayette was constructing in Lansing, Michigan.

Part of the agreement entered into on that date provided as follows:

*"Guarantee:* The subcontractor guarantees that all work to be performed hereunder will be first class in every respect. He further agrees to execute and deliver prior to the final payment a written guarantee in form approved by the Owner, guaranteeing all materials and workmanship, to be free from defects, for a period of three (3) years extending from the date of completion and acceptance of the entire project by the Owner, Architect and Contractor. He further agrees to make all necessary corrections of any found defects, all at the expense of the Subcontractor."

Young installed the waterproofing to specifications. Its work was regularly inspected by Lafay-

_____

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

ette employees. No complaints were made concerning the materials or workmanship during installation. Lafayette thereafter overlaid the waterproofing with several inches of poured concrete. Lafayette evidently neglected to insulate the waterproofing membrane as called for in the architect's plans. Both Young's performance and the concrete overlay were complete by the end of October, 1967.

The following spring the roof began to leak. Lafayette requested Young to honor its guarantee and repair the leaks. An inspection of the site convinced Young that the leaks were not due to faults in its material or workmanship and it accordingly declined to take responsibility for the damage.

Lafayette then refused to forward the final portion of the installment payments due Young on the subcontract. Young filed suit on November 28, 1968 to collect this balance ($1,553.80); Lafayette counterclaimed for $50,000 damages for breach of the work-quality guarantee. The case was removed to Wayne County Circuit Court on May 29, 1969. After a non-jury trial, judgment was entered for Young on July 31, 1973 in the full amount of $1,553.80. Lafayette's counterclaim had been dismissed on June 11, 1973. This appeal followed.

The trial court held that Young had established its right to the final installment payment. Lafayette does not dispute the fact of performance but asserts that the performance rendered was not of the quality warranted.

Since Lafayette claimed breach of the guarantee, it had the burden of demonstrating that Young did not perform in accordance with the contract.[1] The

---

[1] *Oakland Metal Stamping Co v Forest Industries, Inc,* 352 Mich 119, 125; 89 NW2d 503 (1958). The burden remains Lafayette's even

trial judge held that Lafayette did not discharge this burden. That finding cannot be disturbed unless it is clearly erroneous. GCR 1963, 517.1.

The trial judge's conclusion that Lafayette did not adequately show breach on the part of Young depended on his interpretation of the guarantee. Lafayette argued that Young guaranteed a leak-proof roof when he promised that "all work" would be "first class in every respect". The trial judge disagreed, holding that Young guaranteed only that *its* work would be of the highest quality.

The language used is concededly ambiguous. Ambiguities must be resolved against the party drawing the contract. *Michigan Chandelier Co v Morse,* 297 Mich 41, 46; 297 NW 64 (1941); *Gary Boat Club, Inc v Oselka,* 31 Mich App 465, 471; 188 NW2d 127 (1971). Since Lafayette drew this contract, the ambiguity must be resolved in Young's favor.[2] It would be manifestly unreasonable to suppose that Young would agree to guarantee the work of others, especially Lafayette, or to become an insurer as to leakage. The trial judge's conclusion that Young's guarantee only covered its workmanship and materials was clearly correct.

The trial judge concluded that "it was not shown that the leaks in the area of the construction joint were attributable to the improper installation or defective material applied by plaintiff". That finding is amply supported by the record. Lafayette did not demonstrate that Young breached its own guarantee, as correctly construed by the trial

though, as it maintains, it is virtually impossible to determine the cause of the water seepage.

[2] The fact that Young suggested changes in the plans which were eventually adopted is of no consequence since Lafayette's architect reviewed and approved the changes before they were implemented. In so doing, Lafayette made them its own. *Cf. McFarland v Gillioz,* 327 Mo 690, 700; 37 SW2d 911, 916 (1931).

judge. Dismissal of the counterclaim and judgment for Young on the installment balance was therefore properly entered.

Affirmed. Costs to appellee.

J. H. Gillis, J., concurred.

Bronson, P. J. *(dissenting)*. After reviewing the lower court record, I am of the opinion that sufficient evidence was presented to support defendant's counterclaims and, further, that the defendant has met the burden of GCR 1963, 517.1. For these reasons I must respectfully dissent from my colleagues' opinion.