**In re Dennis L. ALDEN and Kathy L. Alden, Debtors.**

**Bankruptcy No. 90–11044.**

United States Bankruptcy Court,
E.D. Michigan, S.D.,
at Flint.

Dec. 11, 1990.

Keith M. Kerwin, for debtors.

James W. Batchelor, for Union Federal Sav. Bank.

AMENDED MEMORANDUM OPINION ON DEBTORS' OBJECTION TO CLAIM OF UNION FEDERAL SAVINGS BANK

ARTHUR J. SPECTOR, Bankruptcy Judge.

Union Federal Savings Bank ("Bank"), assignee of Waterfield Financial Corporation, argues that it is entitled to an unsecured claim for attorney fees incurred prepetition when it commenced mortgage foreclosure proceedings on the Debtors' home. The issue here is whether the parties' prepetition agreement included a right to such fees.

On December 28, 1989, the Bank commenced mortgage foreclosure proceedings against the home of Dennis L. and Kathy L. Alden ("Debtors"). On January 18, 1990, the Debtors filed their joint voluntary petition for relief under Chapter 13 of the Bankruptcy Code. Upon the filing of the petition, an automatic stay arose enjoining the completion of the foreclosure process. 11 U.S.C. § 362(a); *In re Glenn,* 760 F.2d 1428 (6th Cir.) *cert. denied,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985). The Bank filed a timely proof of claim for the secured indebtedness, including $735.60 in foreclosure costs and attorney fees. This amount consists of the following charges: $116.00 for title work; $119.60 publication fee; $400.00 for foreclosure-related attorney fees; and $100.00 for attorney fees for review of bankruptcy plan feasibility. The

Debtors objected to the allowance of these fees and costs. At the hearing on this objection, counsel for the Bank acknowledged that the value of the Debtors' home is less than the principal and interest due on the mortgage, and so it does not possess a fully secured claim. Accordingly, he conceded that the $100.00 in post-petition attorney fees was not allowable,[1] and that its remaining $635.60 claim was allowable, if at all, only as an unsecured claim. In response, counsel for the Debtors conceded that the title work and publication fees, totaling $235.60, were recoverable by the Bank according to the terms of the parties' agreement, and accordingly were allowable. Therefore, it is only the $400.00 pre-petition attorney fee which remains in dispute.

Section 502 of the Bankruptcy Code directs that a court "shall allow [a creditor's] claim ... except to the extent that—(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured...." 11 U.S.C. § 502(b). We must therefore first determine whether the Bank is entitled to the pre-petition attorney fees pursuant to the agreement between the parties.

As in many jurisdictions, Michigan adheres to the so-called American Rule regarding attorney fees, which in the context of foreclosure proceedings has been described as follows:

> In the absence of a statutory provision or some contractual stipulation between the parties for the allowance of attorneys' fees, the court in an action to foreclose a mortgage will not render judgment against the mortgagor for the attorneys' fees of the mortgagee.

*United Growth Corp. v. Kelly Mortgage & Investment Co.*, 86 Mich.App. 82, 89, 272 N.W.2d 340 (1978) (quoting 55 AmJur2d, *Mortgages*, § 625, p. 590); *see also Wilson*

*Leasing Co. v. Seaway Pharmacal Corp.*, 53 Mich.App. 359, 365, 220 N.W.2d 83 (1974) (concurring opinion). In this case, both of the alternative prerequisites for the allowance of attorney fees are met. Paragraph 13 of the mortgage authorizes the Bank to retain from the proceeds of a mortgage foreclosure sale "the attorneys' fees provided for by statute." The statute which governs foreclosure by advertisement, and the only statute to which we have been referred by the parties, is Mich. Comp.Laws § 600.2431, which provides in pertinent part:

> (2) Where an attorney is employed to foreclose a mortgage by advertisement, an attorney's fee, not to exceed any amount which may be provided for in the mortgage, may be included as a part of the expenses in the amount bid upon such sale for principal and interest due thereon in the following amounts:
>
> (a) for all sums of $1,000 or less, $25.00.
>
> (b) for all sums over $1,000 but less than $5,000, $50.00.
>
> (c) for all sums of $5,000 or more, $75.00.
>
> But if payment is made after foreclosure proceedings are commenced and before sale is made, only ½ of such attorney's fees shall be allowed. Both the principal and the interest due thereon shall be included in the sum on which the attorney's fee is computed.

Because the foregoing appears to be the only statute applicable to the foreclosure proceedings initiated by the Bank, we conclude that the parties expressly agreed to be bound by its terms pursuant to paragraph 13 of the mortgage.[2] The Bank would consequently appear to be entitled to recover foreclosure-related attorney fees in the amount specified by this statute.

The Bank contends, however, that the Michigan statute cited above is not controlling in this case. The Bank's argument can

---

**1.** Creditors holding undersecured claims are not entitled to recover post-petition attorney fees pursuant to § 506(b). *See United States v. Ron Pair Enterprises*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *In re Salazar*, 82 B.R.

538 (9th Cir.BAP 1987); *In re Kudlacek*, 109 B.R. 424 (Bankr.D.Nev.1989).

**2.** Whether a provision in the agreement to that effect was necessary is not at issue here.

be summarized as follows: (1) a federal regulation promulgated under the National Housing Act, 12 U.S.C. § 1701 *et seq.*, entitles it to fees in excess of the amount specified by Mich.Comp.Laws § 600.2431; (2) the regulation is expressly incorporated into the agreement between the parties; and (3) even if not expressly incorporated, the regulation must be deemed by implication to constitute a part of the agreement. We reject each of the Bank's contentions.

The regulation upon which the Bank relies states in pertinent part as follows:

(a) The mortgagee may collect reasonable and customary fees and charges from the mortgagor after insurance endorsement only as follows:

.    .    .    .    .

(9) Attorney's ... fees and expenses actually incurred ... when a case has been referred for foreclosure in accordance with the provisions of this part after a firm decision to foreclose if foreclosure is not completed because of a reinstatement of the account. . . .

.    .    .    .    .

(b) "reasonable and customary" fees must be predicated upon the actual cost of the work performed including out-of-pocket expenses. Directors of HUD Area and Insuring Offices are authorized to establish maximum fees and charges which are reasonable and customary in their areas. . . .

24 C.F.R. § 203.552. The *sine qua non* of the Bank's argument is that this regulation allows it to recover attorney fees in excess of the amount specified by the Michigan statute. It points out that the regulation permits the mortgagee to recover "reasonable and customary" attorney fees in the event of foreclosure, and argues in its brief that "the customary and reasonable fee for a foreclosure [in Michigan] is $500 or $600."

■ We assume that the figures cited by the Bank correspond to foreclosures wherein the mortgagee is contractually entitled to recover "reasonable" foreclosure-related attorney fees (i.e., consensual attorney fees), since the collection of fees in that amount where no such contractual right exists would, unless otherwise authorized by statute, constitute a violation of Mich. Comp.Laws § 600.2431. We believe, however, that the determination as to what constitutes "reasonable" fees for purposes of the regulation must be made with reference to local practice in the collection of *nonconsensual* foreclosure-related attorney fees. This interpretation is supported by the fact that subsection (a)(13) of the regulation states that certain kinds of attorney fees and expenses may be recovered *"[w]here permitted by the security instrument."* 24 C.F.R. § 203.552(a)(13) (emphasis added). By clear negative inference, subsection (a)(9) attorney fees (which are at issue here) are authorized regardless of whether the mortgagor objects to, or is even aware of, the provision. Because Mich.Comp.Laws § 600.2431 establishes a statutory maximum for nonconsensual fees, the "reasonable and customary" fees obviously cannot exceed that amount. We therefore reject the Bank's fundamental premise that the regulation permits the recovery of fees greater than the nonconsensual fee schedule set forth in Mich. Comp.Laws § 600.2431. Consequently, even if the Debtors expressly or implicitly agreed to be bound by the terms of subsection (a)(9) of the regulation, they were simply agreeing, in effect, that the mortgagee could recover attorney fees in accordance with the schedule set forth in Mich.Comp. Laws § 600.2431.

■ Even were we to assume that the regulation authorizes the Bank to recover attorney fees independent of any state statutory limit on nonconsensual fees, however, we conclude that the regulation is neither expressly nor implicitly incorporated into the agreement between the parties.

The document entitled "Mortgage Note" (HUD Form 99131 (9–79)) memorializes the Debtors' obligation to pay the principal and interest. Nowhere in this document do the Debtors promise to pay anything other than principal and interest. Even on default, no penalties or other charges are mentioned.

The Bank directs our attention to language at the bottom of the first page of the mortgage (HUD Form 92131M–1 (2–85 Ed.)), located below the solid black line separating the substantive terms from in-house official notations such as the government form numbers. In that section, the following legend appears: "This form is used in connection with mortgages insured under the one-to-four-family programs of the National Housing Act which require a One–Time Mortgage Insurance Premium payment (including sections 203(b) and (i)) in accordance with the regulations for those programs."

The Bank argues that this legend evinces an agreement by the Debtors that they will be bound to all of the regulations enacted under the National Housing Act. We disagree. Stripped to its essentials, the legend simply states that "this form is used ... in accordance with the regulations for [designated] programs." If it were intended that the terms of the agreement would be "in accordance with the regulations for those programs," as the Bank contends, the statement could easily have so read. It did not, and we conclude that neither this legend nor any other language in the mortgage note or mortgage would put the Debtors on notice that they were agreeing to terms outside the four corners of the instruments themselves.[3] We therefore hold that the agreement between the parties does not expressly provide that the Debtors are obligated to pay the Bank's attorney fees, except as specified in paragraph 13.[4]

In the alternative, the Bank maintains that the regulation must be incorporated into the parties' agreement by implication. A general rule of construction is that "[t]he laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of

it, as if they were expressly referred to or incorporated in its terms." *Von Hoffman v. Quincy*, 71 U.S. (4 Wall) 535, 550, 18 L.Ed. 403 (1866); *Farmers & Merchants Bank v. Federal Reserve Bank*, 262 U.S. 649, 660, 43 S.Ct. 651, 655, 67 L.Ed. 1157 (1922); *Brotherhood of Ry. and S.S. Clerks v. Railway Express Agency*, 238 F.2d 181, 184 (6th Cir.1956). An "[i]llustration[__] of this proposition [is] found[__] in the obligation of the debtor to pay interest after the maturity of the debt, where the contract is silent." *Von Hoffman*, 71 U.S. at 550. Because a federal regulation has the status of law, *Batterton v. Francis*, 432 U.S. 416, 425, n. 9, 97 S.Ct. 2399, 655–56, n. 9, 53 L.Ed.2d 448 (1977), an argument can be made that the regulation in question is incorporated into the agreement by force of this rule.

An important limitation to this rule of construction, however, is that it does not generally apply where the contract in question "provides otherwise." 17A C.J.S. Contracts, § 300 p. 295. Since paragraph 13 of the mortgage does in fact "provide otherwise," it would appear that the regulation cannot implicitly vary the terms of the agreement.

■ On the other hand, if the regulation preempted state law in this regard, it could be argued that the statute, and therefore paragraph 13 of the mortgage, were void, and that the regulation constituted the "subsisting" law to be implicitly incorporated into the agreement between the parties. We will therefore next consider whether preemption exists in this case.

The fact that the provision in question is a federal regulation, rather than a statute, does not negate the possibility that it operates to preempt contrary state law. *See*

---

**3.** To the contrary, the legend appears to be primarily intended for the benefit of the lender, so that it can easily identify the proper form to be used in a particular transaction.

**4.** It is conceivable that paragraph 13's reference to "statute" was intended to encompass applicable regulations as well, and thus should be read as incorporating the federal regulation upon which the Bank relies. The meaning of paragraph 13 is unclear in this regard, however, and

Michigan law requires the court to resolve contractual ambiguities "against the party drawing the contract." *Ben T. Young Co. v. Lafayette East Co.*, 56 Mich.App. 54, 57, 223 N.W.2d 361 (1974). Accordingly (and assuming, *arguendo*, that the Bank has greater rights under the regulation than it does under the statute), we decline to interpret paragraph 13 as including the regulation cited by the Bank.

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982) ("Federal regulations have no less pre-emptive effect than federal statutes.") A finding of preemption is warranted where

> Congress, in enacting a federal statute, expresses a clear intent to preempt state law ... when there is outright or actual conflict between federal and state law ... where compliance with both federal and state law is in effect physically impossible ... where there is implicit in federal law a barrier to state regulation ... where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law ... or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress....

*National Steel Corp. v. Michigan Pub. Serv. Comm'n*, 919 F.2d 38, 40–41 (6th Cir.1990) (quoting *Louisiana Pub. Serv. Comm'n v. Fed. Communications Comm'n*, 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898–99, 90 L.Ed.2d 369 (1986)). Even in the absence of an expressed Congressional intent to preempt state law, preemption may exist if a federal agency "meant to pre-empt [state law] and, if so, [if] that action is within the scope of the [agency's] delegated authority." *Fidelity Fed. Sav. & Loan*, 458 U.S. at 154, 102 S.Ct. at 3023.

We fail to find any expression of congressional or administrative intent to displace state law. The lack of a preemptive intent is further evidenced by the fact that Congress expressly preempted state law with respect to other matters covered by the National Housing Act, *see, e.g.*, 12 U.S.C. § 1715u(a)(5) (concerning the interest rate to be charged in connection with temporary mortgage assistant payments),

but made no such provision with regard to attorney fees incidental to foreclosure.

Moreover, we find no conflict between the regulation and the statute. As previously stated, we believe that the regulation simply acknowledges the mortgagee's right to recover nonconsensual foreclosure-related attorney fees, and specifically defers to local custom—which in this case is circumscribed by Mich.Comp.Laws § 600.2431—for purposes of defining the appropriate fee. In fact, a conflict is not inevitable even if we accept the premise, implicit in the Bank's argument, that "customary" fees under the regulation are to be determined with reference to the recovery of consensual attorney fees; if the mortgagor expressly or constructively agrees to be bound by the regulation, then it is consensual in nature, taking it outside the scope of the state statute.[5]

The only way that a conflict between the regulation and the statute can be created is if the former is interpreted as granting the mortgagee the right to recover attorney fees at prevailing market rates, regardless of whether the agreement between the parties expressly provides otherwise. The regulation in no way supports this interpretation, however, and such a strained construction would allow the regulation to surreptitiously operate to the detriment of the unsuspecting mortgagor, and in contravention of the spirit, if not the letter, of state law. We are disinclined to attribute such an intention to Congress, particularly in light of its oft-stated objective of ensuring that consumers have the benefit of full disclosure in connection with their credit transactions. *See, e.g.*, 15 U.S.C. § 1601(a) ("It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him ..., and *to protect the consumer against inaccurate and un-*

5. Where the mortgagor's consent is implied by law, it is concededly awkward to characterize the regulation as a "consensual" provision, inasmuch as it is only incorporated into the parties' agreement by means of a legal fiction. However, such a conclusion follows logically from the premise that applicable laws are deemed a part of the contract, and also serves the judicial objective of interpreting laws so as to avoid unnecessary conflicts. *See Pittsburgh L.E.R. v. Railway Executives' Ass'n*, 491 U.S. 490, 510, 109 S.Ct. 2584, 2596, 105 L.Ed.2d 415, 434 (1989).

*fair* credit billing and credit card *practices.*" (emphasis added); 12 U.S.C. § 2601(a) ("The Congress finds that significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process....")

We therefore find no conflict between the regulation and the statute, nor do we believe that any of the other factors cited above suggesting preemption are present in this case. Accordingly, we conclude that the regulation was not implicitly incorporated into the agreement between the parties.

To recapitulate, we hold that the parties contractually agreed to be bound by the provisions of Mich.Comp.Laws § 600.2431. We further hold that the regulation cited by the Bank defers to, rather than varies the terms of, the Michigan statute. Moreover, even if, as the Bank contends, the regulation would entitle the Bank to attorney fees in excess of the amount permitted by Mich.Comp.Laws § 600.2431, we hold that the regulation is neither expressly nor implicitly incorporated into the agreement between the parties.[6]

The next issue is whether the regulation constitutes "applicable law" for purposes of § 502(b) of the Code. We first note that the statute, by its terms, appears to be referring to such "applicable law" as would render a claim unenforceable in whole or in part. Furthermore, for the reasons discussed above, we are convinced that the regulation was not designed as a mechanism for salvaging an otherwise invalid claim for attorney fees.

Based on the foregoing, we conclude that the Bank is entitled to recover attorney fees only in the amount specified by Mich.

---

6. Because we hold that the regulation upon which the Bank relies is not controlling, we need not address the Debtors' argument that the regulation is inapplicable because foreclosure was in this case aborted by an involuntary reinstatement of the mortgage. We note, however, that there is authority for the Debtors' contention that the deceleration of a mortgage and cure of arrearages pursuant to a chapter 13 plan

---

Comp.Laws § 600.2431. Since foreclosure was not completed in this case, the statute authorizes payment of only $37.50 in attorney fees to the Bank.[7] An appropriate order will enter.

---

"do not constitute a voluntary process of reinstatement." *In re Seibel,* 82 B.R. 463, 465 (Bankr.S.D.Ohio 1987).

7. For purposes of this opinion, we are assuming that the reinstatement of the mortgage pursuant to Chapter 13 is the equivalent of "payment" under Mich.Comp.Laws § 600.2431.