J. Irwin Shapiro, J.
This is an action for a declaratory judgment and a permanent injunction.
The plaintiff is a co-operative housing corporation which operates and maintains a co-operative apartment building located in this county. The defendants are shareholder-tenants of the plaintiff, who, together with their two daughters, reside in a three-bedroom apartment in the plaintiff’s building.
At issue is the right and power of the board of directors of the plaintiff to adopt the following rule and regulation:
“ be it resolved, that the playing of musical instruments shall be prohibited except during the following hours:
“a) Between the hours of 10:00 a.m. to 8:00 p.m. during weekdays.
“ b) Between the hours of 11:00 a.m. to 8:00 p.m. during Saturdays, Sundays and Legal Holidays.
“be it resolved that the playing of musical instruments in excess of an hour and one-half per day by any one person is prohibited unless special approval is requested and received in writing by the Board of Directors.”
In its first cause of action the plaintiff seeks a judgment declaring that the plaintiff corporation, by its directors, has the power to enact and enforce the aforesaid rule and regulation and that the defendants must adhere to and abide by the provisions of the said rule and regulation. In the second cause of action, the plaintiff prays that the defendants be perpetually enjoined and restrained from causing and allowing musical instruments to be played in their apartment in violation of the rule and regulation set forth herein.
The facts are not in dispute. The defendants’ two daughters are musical artists. One plays the violin and the other the flute. In furtherance of their training, these girls are required to practice their respective instruments at least three and one-half hours a day. The defendants moved into this building in 1959 after being assured by the plaintiff’s sponsor that their daughters would be permitted to practice their art. Until April 29, 1965 the girls were allowed to practice without interference. On that date, following complaints by the tenants of adjoining apartment units, the rule and regulation set forth above was *543 adopted, the plaintiff’s hoard of directors apparently agreeing with Keats that “ heard melodies are sweet Tout those unheard are sweeter,”
The neighbors particularly complained about the flute which, by its nature, makes a loud piercing sound. The defendants refused to comply with the rule and regulation. The plaintiff then commenced a summary proceeding in the Civil Court of the City of New York, County of Queens, which ultimately was dismissed without prejudice.
The defendants herein are doubly related to the plaintiff, They are both stockholders as well as tenants of the plaintiff’s building. Article 5 of the corporate by-laws gives the board of directors the power to promulgate such rules and regulations pertaining to the use and occupancy of the premises as may be deemed proper. The proprietary lease provides, in part:
‘‘ ARTICLE 5. PREMISES TO BE USED POR RESIDENTIAL PURPOSES ONLY,
‘ ‘ The Member shall occupy the dwelling unit covered by this agreement as a private dwelling for himself and his immediate family, and for no other purpose, and may enjoy the use, in common with the other members of the Corporation, of all community property and facilities of the project, so long as he continues to own common stock of the Corporation, occupies his dwelling unit, and abides by the terms of this agreement.
“ The Member shall not permit or suffer anything to be done or kept upon said premises * * * which will obstruct or interfere with the rights of other occupants, or annoy them by unreasonable noises or otherwise, nor will he commit or permit any nuisance on the premises * * *.
“article 6. member’s right to peaceable possession.
“In return for the Member’s continued fulfillment of the terms and conditions of this agreement the Corporation covenants that the Member may at all times while this agreement remains in effect, have and enjoy for his sole use and benefit the property hereinabove described, after obtaining occupancy * * 2-
“ARTICLE 14, MEMBER TO COMPLY WITH ALL CORPORATE REGULATIONS.
“ The Member covenants that he will preserve and promote the co-operative ownership principles on wich [sic] the Corporation has been founded, abide by the Charter, By-Laws, rules and regulations of the Corporation and any amendments thereto, and by his acts of co-operation with its other members bring about for himself and his co-members a high standard in home and community conditions.”
In an early case (Thousand Is. Park Assn. v. Tucker, 173 N. Y. 203), the Court of Appeals, in discussing a somewhat similar *544 lease which provided that the tenant should keep and perform all such conditions or rules and regulations as the landlord should from time to time impose, had occasion to compare the right of a landlord under such a provision to that of a corporation to modify or repeal by-laws. At page 212 of that case the court stated:The lease contained the further condition that the tenant should keep and perform all such conditions or rules and regulations as the landlord should from time to time impose. Thus there was reserved to the landlord the power to subsequently make new regulations. Such power, however, though general in form, is not absolute or unqualified. A new regulation established under this reservation, to be valid, must be reasonable. In this respect the case is entirely analogous to that of a member of a corporation where power is reserved to the corporation either by the statute or by its constitution to modify or repeal by-laws and to enact new ones. ‘ If, then, the power is reserved to alter, amend or repeal, and that reservation enters into a contract, the power reserved is to pass reasonable by-laws, agreeable to law. But a by-law that will disturb a vested right is not such.’ ”
The plaintiff cites a number of cases involving the right of co-operative housing corporations to enact binding regulations, but none of these stands for the proposition that such regulations may be unreasonable or arbitrary. (Cf. Opoliner v. Joint Queensview Housing Enterprise, 11 A D 2d 1076; 11 N. Y. Jur., Co-Operatives, p. 62.)
The issue then is whether the instant rule and regulation is reasonable. The court has been unable to find any decision, reported or otherwise, in which the right of a co-operative housing corporation to enact a regulation prohibiting or restricting the playing of musical instruments has been decided. The defendants cite an analogous case (Matter of Twin Elm Mgt. Corp. v. Banks, 181 Misc. 96) which was a summary proceeding by a landlord to recover possession of an apartment on the ground that the tenants’ daughter played the piano continuously each day for a 12-hour period. The case was decided by Mr. Justice Cbawfokd who was then sitting in the Municipal Court. The court held that the playing of the- piano was not so unreasonable as to constitute a nuisance and that mere annoyance to other tenants in and of itself did not create a nuisance or make the tenancy of the occupant undesirable.
All the cases cited by the plaintiff are distinguishable since they involved the right of a co-operative housing corporation to ban or restrict dogs or other animals (Knolls Coop. Section No. II v. Cushman, 19 A D 2d 789, affd. 14 N Y 2d 579), or to *545 outlaw the use of washing machines (Vernon Manor Co-op Apts., Section I v. Salatino, 15 Misc 2d 491; Hilltop Vil. Coop. No. 4 v. Wolman, 13 Misc 2d 753) or food freezers. The presence of dogs or other animals may create problems of safety or sanitation. Mechanical devices, such as washing machines or food freezers, may adversely affect the plumbing or electrical components of the building or even endanger the structure itself. Regulations dealing with animals or mechanical devices which are attached to the property are essentially regulations pertaining to the use of the land. The instant regulation is basically different since it attempts to regulate the mode of living of the occupants of the building. (Cf. Thousand Is. Park Assn. v. Tucker, 173 N. Y. 203, supra).
Spinoza once said that “ one and the same thing can at the same time be good, bad or indifferent.” That applies here with full force. To their neighbors the emanations from the defendants’ apartment may sound like discordant ululations, while the defendants may well feel with Nietzsche that “without music life would be a mistake.” But whether “music is the most sublime noise that has ever penetrated into the ear of man ” is not a matter for judicial determination. It suffices for present purposes to hold that a regulation which would mandate a ban upon the exercise of the musical art, or the enjoyment of music, clearly would be arbitrary and unreasonable. If the plaintiff’s regulation restricting the playing of musical instruments to one and one-half hours per day were strictly enforced, it is doubtful that any of its tenants could ever acquire or maintain expertise as a musician for even those who are fortunate enough to be born with an aptitude for music, must, in order to maintain the necessary proficiency therein, engage in extensive training and practice.
The one and a half-hour provision of the regulation bears internal evidence of its arbitrary character. To take as an example the very defendants in this case and their two daughters. Together they constitute four occupants of the apartment. If each one of them individually availed himself or herself of the right to play a musical instrument for one and a half hours a day, the total playing time thus consumed would be six hours. That would not be prohibited because the regulation provides only that “ the playing of musical instruments in excess of an hour and a half per day by one person is prohibited.” It is obvious that the plaintiff’s other tenants would not be less disturbed if the .musical playing over a period of six hours were accomplished by four people instead of by two or by one. Under the circumstances, the limitation to one and one-half hours bears *546 no reasonable relationship to the alleged mischief sought to be met. The court therefore finds the hour and a half regulation to be arbitrary and unreasonable.
The other portion of the regulation prohibits the playing of “musical instruments” after 8:00 p.m. It is just about that hour that most city dwellers, after having returned from work or school, finish their dinner and have an opportunity for the first time during the day to engage in avocational pursuits. Under the circumstances, to ban the playing of a musical instrument after 8:00 p.m. is in effect tantamount to banning its use completely. To uphold this 8:00 p.m. regulation would mean that no tenant could have a party or social gathering accompanied by piano playing and singing in the evening. So, too, under the broad category of “ musical instruments ” the playing of stereophonic equipment might well be banned. And if this “musical instrument” regulation were to be held valid, it would necessarily follow that a similar regulation prohibiting the playing of a television set or a radio after 8:00 p.m. would be valid.
While sympathizing with the desire of the plaintiff to secure peace and quiet for its tenants, and recognizing that the daily continuous playing even of a Van Cliburn can be too much of a good thing, the court is constrained to conclude that neighbors and noise are one of the penalties of a modern civilization. The 8:00 p.m. regulation is therefore held void as being arbitrary and unreasonable.
The court expresses the hope that the defendants will not so avail themselves of the rights here accorded them as to conclude with Longfellow that “ the night shall be filled with music.”
Accordingly, the court determines that the plaintiff has no right to enforce the rules and regulations adopted by it on April 29,1965 with respect to the playing of musical instruments, since such rules and regulations, under the circumstances here present, are arbitrary and unreasonable. It follows that the plaintiff is not entitled to an injunction.
Ordinarily, defeat of a plaintiff results in a dismissal of its complaint, but where, as here, the plaintiff seeks a declaratory judgment and is unsuccessful in its quest, the court is required to declare the rights .of the parties and not merely to deny the plaintiff the relief it seeks. (Wunderlin v. Lutheran Cemetery, 49 Misc 2d 836). Therefore, the plaintiff’s complaint insofar as it seeks a permanent injunction is dismissed and a judgment is rendered declaring the rules and regulations adopted by the plaintiff’s board of directors to be of no force and effect.