## 1901 WYOMING AVENUE COOPERATIVE ASSOCIATION, a corporation, Appellant,

### v.

### Margaret D. LEE, Appellee.

### No. 8772.

District of Columbia Court of Appeals.

Argued Feb. 18, 1975.

Decided Sept. 30, 1975.

458

Frederick C. LeComte, Washington, D. C., for appellant.

Margaret D. Lee, pro se.

Before REILLY, Chief Judge, and KELLY and NEBEKER, Associate Judges.

KELLY, Associate Judge:

Appellee's complaint in the trial court against the 1901 Wyoming Avenue Cooperative Association [1] was based upon the Association's alleged failure to repair the plumbing in her cooperative apartment, a service she claimed was her due under a Mutual Ownership Contract [2] signed by the

---

[1]. The Association was formed in 1949 and has 59 units, each with one vote in its affairs.

[2]. Under this contract, appellee purchased a membership in the Association for $150 and the perpetual use and enjoyment of an apartment for a total down payment of $3,338.12, assumption of her proportionate share of the mortgage on the building—$4,081.11, and the giving of a collateral note for $2,830.77. The Association retained the right to terminate the contract in the event of a default in any of the payments due under it, a violation of other provisions, or undesirability. The relationship between the Association and appellee has been held to have attributes of that of landlord and tenant. *1915 16th St. Co-op. Ass'n v. Pinkett*, D.C.Mun.App., 85 A.2d 58, 59 (1951); *accord, Green v. Greenbelt Homes, Inc.*, 232 Md. 496, 194 A.2d 273, 277 (1963); *cf. Gullo v. Veterans Cooperative Housing Association*, 101 U.S.App.D.C. 167, 173 n. 8, 247 F.2d 573, 579 n. 8 (1957) (Danaher, J., dissenting in part).

parties in 1954.[3] After a hearing on appellee's motion for partial summary judgment, the Association was found liable for the repair. A subsequent jury trial on the issue of damages resulted in a verdict for appellee in the sum of $7,200. On appeal, the Association asserts as error the grant of the partial summary judgment motion and the submission to the jury of counsel fees as an item of damage. We reverse.

I

Appellee Lee, owner and then occupant of an apartment at 1901 Wyoming Avenue, N.W., first noticed a decrease in the hot water supply to her bathtub in 1966. A pipe connecting the tub to the main supply system (risers) was found to have corroded. The pipe, part of the so-called feeder system, lay directly under appellee's bathroom floor. In 1968, the apartment was leased to a tenant and it has remained rental property ever since. The hot water problem again became acute in 1970. Appellee alleged in her complaint that in December of 1970 she was forced to suspend payment of her monthly operating payments, then approximately $87.50 per month, because of the Association's failure to supply adequate hot water.[4] Appellee has continued to withhold these payments, which by September of 1973 had increased to approximately $128 per month and later to $132.50 per month. After the entry of a partial summary judgment in her favor in January, 1974, appellee had the pipe fixed at a cost of $431.22.

II

Throughout this litigation appellee has contended that the Association was bound to perform and pay for the repair under the Mutual Ownership Contract, the pertinent provision of which reads:

> 8. *Operating Services, Utilities and Reserved:* The Association shall . . . (d) provide and pay for water, heat, refrigeration and electricity, in reasonable amounts . . . (f) provide and pay for all necessary current repairs, maintenance and replacements of project property including the Member's dwelling, *except* that the Member shall be responsible for all interior repairs and all interior painting and decorating. . . . [Emphasis in original.]

House Rules and Regulations[5] in effect at the time stated:

> Members are advised to carry fire and extended insurance on their furniture and household goods. It is recommended that members also carry liability insurance, since they are liable for any damage done to a neighbor's apartment because of faulty plumbing and acts of carelessness. The Association, however, is responsible for any damage to apartments caused by faulty plumbing, wiring, etc., not accessible from the surface in any apartment. [1953 House Rules and Regulations, No. 11.]

This Rule was amended in 1965 to read:

> a. Owners are responsible for loss of property from fire or other damage within their apartments. The Association does not carry insurance on contents of individual apartments.
>
> b. Owners are responsible for damage caused to other apartments in the

---

3. The original complaint contained a count for malicious prosecution which was dismissed on a motion of the Association for summary judgment.

4. Appellee testified at trial that she had withheld payments only since April 1971. The $87.50 payment consisted of $80 for operating expenses and $7.50 for a rental surcharge. The rental surcharge was upheld by this court in an affirmance without opinion. *Al-*

*len v. 1901 Wyoming Avenue Cooperative Association,* Civil Action No. 5670–71 (Super. Ct.D.C., July 5, 1972), *aff'd without opinion,* D.C.App. No. 6816, Oct. 2, 1973, *cert. denied,* 416 U.S. 939, 94 S.Ct. 1942, 40 L.Ed.2d 290 (1974).

5. In the contract appellee covenanted, *inter alia,* to "abide by the Rules and Regulations of the Association."

building from faulty plumbing, bad wiring, or acts of carelessness within the responsibility of the owner.

c. Owners are responsible for repairs accessible from the "surface" in any apartment, as defined by legal precedent. Except for damages caused by faulty plumbing in the main risers, which belong to the Association, damage is the responsibility of each owner.

The Rule was amended again in 1972 to read:

Owners are responsible for the loss of property from fire or other calamities within their apartments. Although the Association insures the entire building according to principles of sound management, the contents of individual apartments are not covered. An owner is liable for damage caused to other apartments by his plumbing, wiring, other personal property, or from actions within the responsibility of the owner. The owner is solely responsible for and must maintain the plumbing, wiring, etc., that serves specifically his apartment, as defined by legal precedent. For example, the Association maintains and is responsible for damages from leaks from risers, but an individual owner must maintain and is responsible for damages from leaks from the feeder pipes to his apartment. [Subsection J of Section 2; original underlining omitted.]

In submissions supporting her motion for summary judgment appellee asserted that the words "interior repairs" as used in the contract referred only to the superficial type of decorative work which an owner might ordinarily perform, not the major plumbing operation required here. The general tenor of appellee's argument has been that she has a contractual right to the repairs and that this right cannot be affected by modifications to the contract, in particular by the house rules subsequently adopted by the Association.

The Association argues that the contract placed the burden of repairing these particular pipes on appellee. It alleges that the interior of an apartment includes the area beneath the flooring but on top of the concrete slab which supports it and the area just behind the plastered surface of the walls and ceiling; in other words, the space from the concrete slab below the apartment to the concrete slab above. Thus, the interior repairs would necessarily include those for the feeder pipes. The Association implies that the feeder pipes are part of the private apartment, and not property that it owns and has authority over. The Association also contends that the division of responsibility between it and its members for repairs to plumbing has been set and followed for at least twenty years and that the present division, feeders as the responsibility of the members and risers as the responsibility of the Association, was codified in and rests in part on prior litigation.

In ruling on appellee's motion for summary judgment the motions judge concluded that the construction which the Association placed on the word "interior" was legally erroneous and not within the contemplation of the parties at the time the contact was executed. He based his decision on the fact (1) that it was reasonable to assume that water would be supplied to a fixture within an apartment as opposed to a connection inside a wall, (2) that adoption of the Association's interpretation of the document would render other [unspecified] portions of the contract meaningless, and (3) that if the contract contained ambiguities, they must be resolved against the drafter. In short, he interpreted the written contract.

◼ Super.Ct.Civ.R. 56(c) provides that summary judgment shall be granted if the materials submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Its purpose is to provide prompt disposition of cases which

present only questions of law or contain unfounded claims or sham defenses.[6] Where genuine issues of material fact exist, the parties are entitled to the due consideration provided by a full trial, even if the record before the motions judge has developed the facts as fully as a trial might.

■ Appellant asserts that the contract here at issue was ambiguous on its face and we agree. The meaning of the word "interior" as used in the contract was clearly open to several reasonable interpretations.[7] A genuine issue of material fact was thus presented and the grant of summary judgment was improper.[8] *Weiss v. Kay Jewelry Stores, Inc.,* 152 U.S.App.D.C. 350, 352–53, 470 F.2d 1259, 1261–62 (1972); *Nyhus v. Travel Manage-*

*ment Corporation,* 151 U.S.App.D.C. 269, 271–72, 466 F.2d 440, 442–43 (1972).

Appellant also objects to the manner in which the motions judge interpreted the contract, specifically, the refusal of the judge to consider the course of conduct of the parties in the twenty-odd years following the signing of the contract.

■ Where the court is faced with an integrated agreement which contains ambiguous terms, the standard of interpretation is " '. . . what a reasonable person in the position of the parties would have thought it meant.' " [9] *Minmar Builders, Inc. v. Beltway Excavators, Inc.,* D.C. App., 246 A.2d 784, 786 (1968). The presumption is that the reasonable person knows all the circumstances before and contemporaneous with the making of the inte-

---

6. 10 Wright & Miller, Federal Practice and Procedure: *Civil* § 2712 (1973).

7. *Burbridge v. Howard University,* D.C.App., 305 A.2d 245, 247 (1973), quoting 17A C.J.S. *Contracts* § 294, at Pp. 34–35 (1963). A contract is ambiguous when it or the provisions in question are reasonably susceptible of different constructions or interpretations.

8. Appellee had requested a jury trial, so that the function of interpreting the contract, if the evidence adduced at trial supported diverse reasonable results, would fall to the jury. *Rich v. Sills,* D.C.Mun.App., 130 A.2d 920, 922 (1957); 4 Williston on Contracts, § 616 at 660–62 (3d ed. 1961).

If the evidence did not support several reasonable interpretations, but instead only one, the meaning of the contract would be decided by the court as a matter of law. The Restatement of the Law Second, Contracts 2d, Tentative Drafts Nos. 1–7 (1973) states that "[a] question of interpretation of an integrated agreement is to be determined by the trier of fact if it depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence. Otherwise a question of interpretation of an integrated agreement is to be determined as a question of law." *Id.* at § 238(2) and *Comment* d.

In this connection the following remarks are also of interest:

Analytically, of course, the question of what the parties intended is clearly a question of fact. But the courts have long called it a question of law. The reason is not

that it is a question of law in the literal sense, for it is a question of fact in the literal sense, but the reason is that the judge is better qualified than the jury to interpret the written language. The courts make the determination on practical grounds as to whether the question should be decided by the judge or by the jury, and then they put the label on accordingly. What for practical reasons is assigned to the judge is called a "question of law" and what for practical reasons is assigned to the jury is called a "question of fact." This approach, which we call the practical approach, is surely sensible from the standpoint of producing desirable results. [4 K. Davis, Administrative Law § 30.02 at 197 (1958); footnote omitted.]

9. The revised version of the Restatement—Restatement of the Law Second, Contracts 2d, Tentative Drafts Nos. 1–7 (1973) adopts essentially this standard with respect to all contracts, whether ambiguous or not. *See* Section 228, *Comment* b which states that in interpreting a contract the court seeks to put itself in the position the parties occupied at the time the contract was made and Section 229 which provides that a reasonable meaning for all contract terms is preferred.

In some areas a more refined standard has developed. Insurance contracts are read through the eyes of the reasonable purchaser. *Messina v. Mutual Benefit Health and Accident Ass'n,* 228 F.Supp. 865, 868 (D.D.C. 1964), *aff'd,* 121 U.S.App.D.C. 328, 350 F.2d 458 (1965), *cert. denied,* 383 U.S. 908, 86 S. Ct. 888, 15 L.Ed.2d 663 (1966).

gration.[10] The reasonable person is also bound by all usages—habitual and customary practices—which either party knows or has reason to know.[11] The standard is applied to the circumstances surrounding the transaction [12] and to the course of conduct of the parties under the contract,[13] both of which are properly considered when ambiguous terms are present. The determination of the motions judge that the extent of the Association's obligation to appellee could only be derived from the contract itself and from the House Rules in existence at the time was thus erroneous; and considering the contract without taking into account the attendant circumstances and usages and the subsequent actions [14] of the parties thereunder provided him with an insufficient basis for interpreting the contract.[15]

The motions judge also stated in his opinion, citing *Cowal v. Hopkins,* D.C.

App., 229 A.2d 452, 454 (1967), that if there were any ambiguities in the contract, they must be resolved against the Association, the drafter of the contract. In *Cowal,* a real estate broker sought payment of a commission which he claimed was due under a contract giving him "exclusive rights" for three months to sell a gift shop. The court held that the agreement was unambiguous in its provision that Cowal was to receive a commission only if he procured a buyer and thus that the owner had not surrendered her right to sell the property herself. Had the contract been ambiguous, the court stated, the ambiguity would be construed against the party who drafted it, in that instance the broker.

■ The rule that ambiguities in a contract are construed strongly against the drafter is sometimes considered simultaneously with the language and surrounding

---

10. Restatement of Contracts §§ 230 and *Comment* a, 247 (1932) ; 17A C.J.S. *Contracts* § 294 (1963).

11. Restatement of Contracts, § 247(b). *See also id.* §§ 246 and 248 (1932). Whether a party knew or had reason to know of a usage would present a question of fact for the jury.

12. *Rich v. Sills, supra* note 8, at 922 ; *Fox v. Johnson & Wimsatt,* 75 U.S.App.D.C. 211, 217, 127 F.2d 729, 735 (1942).

13. *Waters v. Kopp,* 34 App.D.C. 575, 580, (1910), *appeal dismissed,* 223 U.S. 746, 32 S.Ct. 533, 56 L.Ed. 640 (1912) ; *Susskind v. 1136 Tenants Corporation,* 43 Misc.2d 588, 251 N.Y.S.2d 321, 328 (1964) ; *cf. Hill v. Cook,* D.C.Mun.App., 156 A.2d 458, 460–61 (1959) ; *Green v. Obergfell,* 73 App.D.C. 298, 311 n. 39, 121 F.2d 46, 59 n. 39, *cert. denied,* 314 U.S. 637, 62 S.Ct. 72, 86 L.Ed. 511 (1941).

14. Subsequent acts might also show a modification of the contract. In the context of a contract between a cooperative apartment association and one of its members, a modification could arise either as a result of negotiations between the association and the individual member or through rules or regulations adopted by a designated number of members. In the latter case, although a definitive statement has not yet been made by this court in this area, recent litigation suggests that reasonable modifications will be regarded as valid, *Allen v. 1901 Wyoming Avenue Coopera-*

*tive Association, supra* note 4, Civil Action No. 5670–71 at 5, while drastic revisions of property rights under the contract will not. *1901 Wyoming Avenue Cooperative Association v. Lee,* Civil Action No. 5669–71 (Super.Ct.D.C., Mar. 8, 1972), *aff'd on other ground,* D.C.App., 301 A.2d 70 (1973).
   *See also Justice Court Mutual Housing Coop., Inc. v. Sandow,* 50 Misc.2d 541, 270 N.Y.S.2d 829, 831–33 (1966), in which the court held certain rules adopted by a cooperative housing corporation to be unreasonable and thus void since they, in effect, banned the use of musical instruments and the attainment of musical proficiency, and *Vernon Manor Co-op. Apartments v. Salatino,* 15 Misc.2d 491, 178 N.Y.S.2d 895, 900–02 (1958), holding that a monthly charge of $2 for the use of washing machines imposed by a cooperative housing corporation three years after the installation of the machines was reasonable as no vested right to use the machines had been acquired.

15. The same result would be reached under the current revision of the Restatement which establishes a single standard of interpretation for all contracts under which the surrounding circumstances (§ 238(1)), the course of performance under the contract (§§ 228(5), 229) and reasonable usages (which supplement the agreement where the parties have reason to know of them) are to be considered, among other factors. Restatement of the Law Second, Contracts 2d, Tentative Drafts Nos. 1–7 (1973).

circumstances of an agreement and viewed as a presumption which the proponent of the contract has the burden of overcoming.[16] The Restatement of Contracts regards it, with respect to integrated agreements, as a secondary rule which comes into play only where application of the reasonable person standard alluded to earlier and certain other rules have failed to give the writing one definite meaning.[17] A more recent commentary is in substantial agreement with the Restatement when it states that the principle applies only after the ordinary rules of construction have been applied and the agreement is still ambiguous. 17 Am.Jur. *Contracts* § 276 (1964). "The rule does not justify the taking or adopting of an isolated clause in dispute without examining the entire contract, the relations of the parties, their intentions, and the circumstances under which they executed the contract." *Id.* In our judgment, it is appropriate in the circumstances of this case to consider the contract first under the reasonable person standard and then, if no result is reached, to apply the rule as a rebuttable presumption.

### III

Since the case must be retried, we comment briefly on the issue of damages. Appellee's original complaint had contained a count for malicious prosecution based upon a prior suit for declaratory relief filed by the Association against appellee in which she prevailed.[18] The count contained alle-

gations that the prior suit was filed with malice and without just cause; that appellee was harassed by the many motions filed in that action, and that as a result she suffered mental anguish, physical injury to her business and reputation, loss of commissions from her employment in the real estate business, the cancelling and rescheduling of a trip to Europe, and the expenses of defending herself. She requested $30,000 compensatory damages, $10,000 punitive damages, interest, costs and attorneys' fees since the filing of the original action.

The Association moved for summary judgment on both counts of appellee's complaint, but was granted judgment only as to the count of malicious prosecution. Thereafter, a different trial judge granted appellee's motion for partial summary judgment, discussed in Part I, on the remaining count of breach of contract. The trial on damages, before still a third judge, was preceded by an unreported conference in chambers, but certain decisions made at that conference were later put on record. First, the parties stipulated to a bill of $431.22 for repairs to the plumbing which appellee finally made shortly before trial, and a prior 1973 estimate of $296.00 she had obtained for the same work. It was then noted, *inter alia,* that the trial judge had denied appellee's motion to amend the ad damnum clause in the breach of contract count to include the damages, compensatory and punitive, of the dismissed malicious prosecution count; had ruled that the Association would not be permit-

---

16. *Gary Boat Club, Inc. v. Oselka,* 31 Mich. App. 465, 188 N.W.2d 127, 130 (1971); *Computer Sciences Corporation v. Ferguson,* 74 Cal.Rptr. 86, 92 (Ct.App.1968); *cf.* 17A C. J.S. *Contracts* § 586 at 1139 (1963).

17. Restatement of Contracts § 236(d) (1932); *accord,* 4 Williston on Contracts §§ 619, 623 (3d ed. 1961). The "other rules" applied in the first instance are found in § 235 of the Restatement and deal with using the ordinary meaning of language, interpreting the writing as a whole, use of the technical meaning of words, and consideration of the circumstances of the transaction and sub-

sequent acts of the parties. The revised Restatement provides that so long as other factors are not decisive, the meaning of the nondrafting party will be preferred. Restatement of the Law Second, Contracts 2d, Tentative Drafts Nos. 1–7 § 232 and *Comment a* (1973).

18. The Association was testing the validity of an increased rental surcharge of $40 per month, a fifty percent surcharge over the monthly maintenance charge, which appellee refused to pay. *1901 Wyoming Avenue Cooperative Association v. Lee, supra* note 14.

ted to cross-examine appellee about her delinquent payments to the cooperative; that any defense of laches or waiver had previously been ruled on by the motions judge, and that a psychiatrist would be permitted to testify for appellee.

The damage trial thus became hopelessly complicated by the court's allowing appellee to testify freely concerning the prior suit between the parties over an increased rental surcharge, ostensibly to show vexatious and oppressive conduct, yet forbidding the Association to introduce evidence of reasonableness and good faith in regard to its conduct. Additionally, on the ground that the Association's liability for a breach of contract (failure to supply hot water) had been established as a matter of law, appellee was allowed to testify that she had incurred some $5,200 in attorneys' fees over a three-year period preceding the end of February 1974, despite the fact that the court had ruled there could be no recovery of attorneys' fees for the prior suit.[19] Moreover, although the malicious prosecution count of the complaint had been dismissed and the court had initially denied the motion to amend, appellee was eventually permitted to amend the complaint to conform to the evidence which the court had permitted to be introduced and all items of damage (excluding punitive damages) claimed in that count were submitted to the jury as possible foreseeable results of a breach of contract.[20]

The Association complains primarily of the court's permitting the jury to consider an award of counsel fees in a breach of contract action [21] and of the court's refusal to allow it to introduce evidence of good faith or any evidence bearing on its interpretation of the contract.

■ The court considered appellee's request to include attorneys' fees as an item of damages in chambers before trial, so that we are denied knowledge of the grounds for its ruling. In this jurisdiction, however, it is well settled that counsel fees are not generally allowed the prevailing party either as damages or costs. *F. W. Berens Sales Co., Inc. v. McKinney,* D.C. App., 310 A.2d 601, 602 (1973). Moreover, the Supreme Court has recently held that federal courts have no authority in the absence of a specific statute to award such fees to attorneys representing successful litigants. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

■ There are, of course, exceptions. The relevant ones in this action are that where a party brings or maintains an unfounded suit or withholds action to

19. No evidence was offered as to what services were rendered, at what cost, for that suit or this one. Counsel informed the court at the bench that appellee had been charged over $6,000 for both cases.

20. The items submitted to the jury were loss of earnings from inability to continue employment as real estate salesperson, $24,500.00; loss from cancellation of flight to Europe, $246.00; psychiatric fees, $128.00; repairs to pipe 1958 and 1965, $47.50 and 1974, $431.22; loss of rent, $60.00; cost of litigation—attorneys' fees, $5,200.00; cost of litigation—xeroxing, secretarial, parking, taxis, gas, $1,440.00; witness fees, $335.00; and court costs, $50.00.

21. The court instructed the jury that:
    Further, with regard to attorneys' fees. I instruct you that there may be no recovery for attorneys' fees unless you find that defendant's conduct . . . in not making the repairs was unwarranted, oppressive and vexatious conduct. Conduct is oppressive and vexatious if the party is acting without good faith and merely wishes to annoy or embarrass the other party. It is an action for which there is no reasonable ground. Conduct is not oppressive or vexatious if a party is standing on a reasonable interpretation of disputed contract clause, even if a Court subsequently decides the issue adversely to them. [R. at 183–84.]

which the opposing party is patently entitled, as by virtue of a judgment or because of a fiduciary relationship, and does so in bad faith, vexatiously, wantonly, or for oppressive reasons, reasonable attorneys' fees may be allowed. *F. W. Berens Sales Co., Inc. v. McKinney, supra* at 603.[22] On the record before us there is no evidence that appellee was unequivocally entitled to the plumbing repair she here claims nor that appellant's refusal to make the repair was persisted in in bad faith. To the contrary, the record reflects that the Association has consistently required all of its members to make repairs to the feeder pipes for at least the last twenty years while taking the maintenance of the riser system on itself and that its actions in this regard have been based in part on prior court action.

The giving of an instruction unwarranted by the evidence is error, *Harris v. Plummer*, D.C.App., 190 A.2d 98, 99–100 (1963), and grounds for reversal where the deliberations of the jury are affected, *Hayes v. Sutton*, D.C.App., 190 A.2d 655, 656 (1963). Were the award not premised on a faulty grant of summary judgment as to liability, an issue with which it is inextricably interwoven,[23] it would have to be vacated on this ground alone. We treat the issue as it might possibly arise in subsequent proceedings in this litigation.[24]

*Reversed and remanded.*

22. *See, e. g., Kiser v. Miller*, 364 F.Supp. 1311, 1320 (D.D.C.1973), imposing reasonable attorneys' fees on defendant trustees in a suit by retired miners for pension benefits to compel defendants to discontinue protracted discriminatory conduct and breach of fiduciary duty and *cf. Dillard v. Yeldell*, D.C. App., 334 A.2d 578 (1975), awarding filing fees to welfare recipients forced to sue officers of the District of Columbia Department of Human Resources for welfare payments to which they had been adjudged entitled, but which had not been forthcoming from the agency for up to three months.

23. *Camalier & Buckley-Madison, Inc. v. Madison Hotel, Inc.*, 513 F.2d 407, 421 (D.C.Cir. 1975).

24. We do not comment on the other items of damage claimed by appellee which may or may not be at issue on the retrial of this case except to point out that "[i]t is well established as a fundamental and elementary principle that a person who is injured by a breach of contract must take reasonable steps to mitigate his damages." *Sade v. Staley*, 212 F.Supp. 631, 632 (D.D.C.1963).